## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CSMG TECHNOLOGIES, INC., | § | |
| f/k/a CONSORTIUM SERVICE | § | |
| MANAGEMENT GROUP, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-CV-0715 |
| | § | |
| GORDON W. ALLISON | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff CSMG Technologies, Inc. ("CSMG") filed this suit against Defendant

Gordon Allison, a co-founder and former executive of CSMG, alleging breach of

contract, negligent misrepresentation, fraud, breach of fiduciary duty, and other

claims.  Allison has two summary judgment motions pending before the Court.  First,

Allison's Motion to Dismiss [Doc. # 32] ("Converted MSJ"), which has been

converted to a motion for summary judgment,[1] seeks dismissal of (1) Plaintiff's

negligent misrepresentation claim under the statute of limitations and (2) Plaintiff's

breach of contract claim.  Second, Allison filed a Motion for Partial Summary

---

[1]    *See* Order [Doc. # 35].  After the motion was converted, Defendant filed a
supplemental brief in support [Doc. # 38], Plaintiff responded [Doc. # 57], and
Defendant replied [Doc. # 59].

Judgment [Doc. # 37] ("MPSJ") on his counterclaim regarding a Promissory Note between the parties.[2]

On September 3, 3008, the parties appeared for oral argument on both motions and, following the argument, both filed post-argument briefing as invited by the Court.[3]  Having now considered all the parties' briefing, oral argument, applicable legal authorities, and all matters of record, the Court concludes that both motions should be **granted**.[4]

## I.    <u>BACKGROUND</u>

Defendant Gordon Allison, along with Don Robbins, co-founded CSMG in

---

[2]    Plaintiff has responded to the MPSJ [Doc. # 56] and Defendant has replied [Doc. # 58].

[3]    *See* Plaintiff CSMG Technologies, Inc's Supplemental Response to Defendant Gordon Allison's Motions for Summary Judgment on Promissory Note, Breach of Contract, Attorneys' Fees and Negligent Misrepresentation Claims [Doc. # 67]; Defendant's Supplemental Reply in Support of Motions for Summary Judgment on Negligent Misrepresentation, Breach of Employment Contract, and Counterclaim for Payment of Promissory Note [Doc. # 68].

[4]    Plaintiff's Second Amended Complaint [Doc. # 28] ("Complaint") also brings claims not affected by the pending motions, including claims for breach of fiduciary duty, promissory estoppel, and fraud.  Allison amended his counterclaim to include claims for breach of stock option agreements, *see* Doc. # 61, but the amendment does not affect the pending motions.  Finally, CSMG seeks to recover its attorneys' fees incurred in prosecuting its breach of contract claim.  Allison sought dismissal of Plaintiff's request for fees in his original Motion to Dismiss.  The Court did not address that aspect of the motion when it was converted to a summary judgment motion.  The claim remains pending.  CSMG agreed at oral argument that its request for attorneys' fees is only viable if CSMG prevails on its breach of contract claim.

1992.  Robbins is the current president and Chief Executive Officer of CSMG.  The current dispute centers on the parties' agreements regarding Allison's compensation and performance duties, and on allegations by each party that the other did not meet its obligations.  The agreements to which the parties cite were made in 2003 and 2005, long after Allison and Robbins founded CSMG.

Prior to these agreements, Defendant Allison held positions as Chief Financial Officer, Executive Vice President, and Secretary of CSMG, and was a member of CMSG's Board of Directors.  He states that he had responsibility for running Anaerobic Farm Waste, Inc. ("AFW"), a subsidiary of CSMG, and that he diligently promoted AFW for more than ten years, with "little or no funding from CSMG."[5] Allison also held management positions in other CSMG subsidiaries, including Live Tissue Connect, Inc. ("LTC").

By letter dated August 7, 2003, Robbins accused Allison of poor performance, including failure to adequately raise capital for CSMG.[6]  Robbins' letter also set forth his account of misrepresentations by Allison, including allegations that Allison falsely stated that payments had been made to CSMG when the payments in fact were paid

---

[5]     MPSJ, at 2.

[6]     Letter from Don Robbins to Gordon Allison, dated August 7, 2003 (Exhibit C to Defendant's Supplemental Brief in Support of Converted MSJ [Doc. # 38]) ("2003 Letter").

to Allison personally.  Robbins further alleged that, when negotiating for a guaranteed annual salary of $150,000, Allison falsely represented that certain "Native American resolutions" had been signed concerning Anaerobic Animal Waste[7] plants on Native American reservations.

On November 5, 2003, as compensation for Allison's services, CSMG executed and delivered to Allison a Promissory Note for $254,000.[8]  Both parties agree that the Promissory Note is a binding agreement, and each argues that the other is in breach:  Allison argues that CSMG is in breach for nonpayment, and CSMG argues that Allison is in breach for nonperformance of duties.  The Note provides:

> [CSMG], in receipt of good and valuable consideration consisting of unpaid salary and unreimbursed expenses, receipt of the benefits of which is acknowledged by CSMG, promises to pay to [Allison] on or before November 5, 2006 (the "Due Date"), the principal amount of $254,000.[9]

---

[7]  Anaerobic Animal Waste apparently is another subsidiary of CSMG.  According to the 2003 Letter, Allison served as President.  *Id*.

[8]  Promissory Note dated November 5, 2003 (Exhibit B to Defendant's MPSJ) ("Promissory Note").  Allison explains that, because CSMG never turned a profit and had no income, it was unable to pay employees for their services, and therefore "[o]fficers and directors received stock as payment for their services rendered and, from time to time, CSMG entered into promissory notes with certain key employees."  MPSJ, at 3.  However, he maintains that the Promissory Note is not an employment contract, that he had no employment contract with CSMG, and that, apart from the Promissory Note, he had no written agreements with CSMG.

[9]  *Id*.

The Note also reflects agreements regarding interest and default, although it specifies no particular payment terms.[10]  By its plain language, the Note assigns no duties to Allison, instead acknowledging receipt by CSMG of consideration in the form of "unpaid salary and unreimbursed expenses."   Nevertheless, Allison states his understanding that the Promissory Note was in consideration for past ***and future*** performance of services to CSMG.[11]

On July 14, 2004, the CSMG Board of Directors held a meeting in order "for Gordon Allison to explain the arrangement being considered by United Engineering Company (UEC) and Dr. C.T. Stanley's Company Best Haitian American Trading and Development (BHA)."[12]  The minutes reflect that Allison, the only Board member who was or purported to be acquainted with Stanley, had proposed a business

---

[10]    *Id*.  The Note states that "CSMG may prepay this Note, in part from time to time or in whole at any time, without penalty."  *Id*.

[11]    Deposition of Gordon Allison (Exhibit A to Response to MPSJ [Doc. # 56]) ("Allison Deposition"), at 9-10 (Allison testifies that the Promissory Note was issued to him by CSMG for Allison's work from 1992 through 2006); *id*. at 173 (the Note was issued in 2003 for "past and future employment").  *See* MPSJ, at 4 ("Consideration for the Allison Note was past and future performance of services related to employment and payment of unreimbursed expenses"); *id*. at 7 ("In consideration of Allison's past and future performance of services related to employment and payment of unreimbursed expenses, CSMG executed and delivered the Allison Note").  Of course, any alleged unwritten agreement to provide future services faces serious parol evidence problems.

[12]    Minutes, CSMG Board of Directors Meeting, July 14, 2004 (Exhibit C to Plaintiff's Response to MPSJ [Doc. # 56]) ("2004 Minutes"), at 1.  The precise relationship between CSMG, UEC, and Stanley is not clear from the minutes.  Allison states in his deposition that UEC was a subsidiary of CSMG.  Allison Deposition, at 22.

arrangement to build "low cost modular homes for Third World Countries."[13]  The Board approved the continuation of the arrangement between UEC and Stanley.[14]  At the same meeting, the Board discussed Allison's proposal for sale of 25% of CSMG subsidiary AFW, and Allison's "desperate" need for funds for a "feasibility study" for AFW.[15]

On August 28, 2004, Robbins wrote a second letter complaining of Allison's performance and conduct.[16]  In particular, Robbins expressed concern that CSMG had not been adequately informed of Allison's personal relationships with or financial interests in persons or entities with whom CSMG or Anaerobic Animal Waste was conducting business (including C.T. Stanley and Best Haitian-American Trade and Development Company) and demanded that Allison make full written disclosure of all such interests.

On January 5, 2005, CSMG's Board of Directors met again.  The parties agree

---

[13]    2004 Minutes, at 1.

[14]    *Id*. ("Motion by David Selby and seconded by Conrad Derdeyn for CSMG to approve Stanley to continue with the UEC arrangement that UEC agrees on. . . . Motion carried.")

[15]    *Id*. at 2-3.  The minutes do not define a "feasibility study."  Allison testified at his deposition that the purpose of a feasibility study is "to determine what the costs of an anaerobic plant [to process animal waste] would be."  Allison Deposition, at 26.

[16]    Letter from Donald S. Robbins to Gordon Allison, dated August 28, 2004 (Exhibit D to Defendant's Supplemental Brief in Support of Converted MSJ) ("2004 Letter").

that, as reflected in the minutes, the Board and Allison agreed to parts of a proposal

by Allison concerning his future compensation and role with CSMG.[17]  As reflected

in the minutes, the parties agreed in pertinent part as follows:

1.     Allison will begin receiving $12,500 monthly payments beginning February 1, 2005 to be characterized as payments on his [Promissory] Note.

2.     All of Allison's efforts will be expended exclusively on [AFW] activities and he will be paid a 6% commission on the sale of anaerobic equipment which commission shall be over and above the $12,500 Note payments.

3.     Allison resigns as Executive Vice-[P]resident, Secretary and Chief Financial Officer of both CSMG and Live Tissue Connect, Inc. (LTC).

4.     Allison continues as Board member of CSMG.

5.     Allison continues as President, COO and Director of AFW.

*     *     *     *

7.     Allison's salary of $150,000 from CSMG ceases. . . . [18]

The parties agreed that these terms would be in effect for six months, and that they

would review the situation at the end of that six-month period to determine whether

---

[17]     Minutes, CSMG Board of Directors Meeting, January 5, 2005 (Exhibit E to Defendant's MPSJ) ("2005 Agreement").

[18]     *Id.*

to continue the arrangement.[19]    CSMG claims that the Board's actions at the January 5th meeting, as memorialized in the minutes, modified the Promissory Note, and that CSMG's liability under the Note "became further conditioned on Allison's employment with CSMG as a Director, and with AFW as President, Chief Operating Officer, and Director."[20]  Allison disagrees and argues that the 2005 Agreement did not modify the Note.[21]

After the end of the six-month period, on August 5, 2005, Allison permanently resigned his positions in Live Tissue Connect LLC, which included Executive Vice President, Financial Officer, and Director; his positions as Vice President, Secretary, and Treasurer of Gas-Tech LLC; and his position as Secretary of CSMG.[22]  However, he retained his position as a Director of CSMG, and his positions as President and

---

[19]     *Id.*

[20]     Response to MPSJ [Doc. # 56], at 6.

[21]     Allison stated this position at oral argument, and took the same position in some of his briefing.  *See* Reply to MPSJ [Doc. # 58], at 4 ("Even if the Board minutes of January 5, 2005 operate to modify the Note, a fact which Defendant disputes . . ."). Allison's earlier briefing takes the opposite position, referring to modification of the Promissory Note by the January 5th meeting, and arguing that the modification was supported by additional consideration, MPSJ, at 7-8, but this position is now deemed abandoned.

[22]     Memorandum from Gordon W. Allison to CSMG Board of Directors, dated August 5, 2005 (Exhibit F to Defendant's MPSJ).

Director of AFW.[23]

CSMG complains and presents evidence that Allison performed poorly in his duties to CSMG, including obtaining financing the company and promoting the projects of CSMG and AFW.[24]  First, regarding Allison's duty to provide financing, CSMG cites to Allison's deposition testimony that, from approximately 1998 through 2005, Allison raised only about $200,000 through loans and another $50,000 through sale of stock,[25] and that CSMG "possibly" had paid him more than he raised for the company.[26] Second, CSMG presents evidence that Allison failed to promote and administer the projects of CSMG and AFW.  When asked at deposition "what . . . [he] did" for AFW, Allison answered that he "[a]ttempted to sell a feasibility program for the engineers" of UEC, a subsidiary of CSMG, and that the purpose of the feasibility program was "to determine what the costs of an anaerobic plant would be."[27] However, from 1999 to 2007, despite multiple attempts to sell feasibility studies, he

---

[23]     *Id.*

[24]     *See* Allison Deposition, at 14-19 (Allison states that his duties were to "help finance the company," to "fill in for the president of the company," to "perform all facets of the company," to "work with the securities attorney and auditor," to "borrow money [and] sell stock," to "prepare the minutes" for board meetings and stockholder meetings, to "represent the company" to stockholders, to "promote" and "represent" the company, and to "take on the anaerobic [project]").

[25]     *Id.* at 92-95.

[26]     *Id.* at 173.

[27]     *Id.* at 21-22, 26.

successfully sold only one study.[28]  Morever, even for the successful sale, the money

collected only covered the company's expenses.[29]

Allison claims that he performed his required obligations to CSMG.  He states

that CSMG made three payments on the Promissory Note totaling $28,030, that an

unpaid balance of $225,970 remains and that, with interest, he is currently owed

$330,842.68.[30]   He has made demands to CSMG for payment.[31]

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the

party's case, and on which that party will bear the burden at trial.[32]   Summary

judgment "should be rendered if the pleadings, the discovery and disclosure materials

---

[28]   *Id*. at 29-31.

[29]   *Id*. at 30 ("If there was any difference between the expenses and the [$]16,000 [collected from the sale], then you made a little money, but I don't have the numbers, and I doubt there was any money made.")

[30]   Affidavit of Gordon Allison, dated January 4, 2008 (Exhibit C to MPSJ).

[31]   Letter from Drew Neville, Hartzog Conger Cason & Neville, to William I. Kohn, Esq., Schiff Hardin, dated March 28, 2006 (Exhibit H to Defendant's MPSJ); Letter from Mark R. Paisley, Adami, Paisley & Appell, P.C., to CSMG, dated January 29, 2007 (Exhibit G to Defendant's MPSJ).

[32]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[33]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[34]  The moving party, however, need not negate the elements of the non-movant's case.[35]  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"[36]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[37]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[38]

---

[33]  FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[34]  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[35]  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[36]  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

[37]  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[38]  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[39]  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"[40]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[41]  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.[42]  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."[43]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[44]

---

[39]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[40]   *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

[41]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[42]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

[43]   *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).

[44]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[45]   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.[46]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[47]

## III.   ANALYSIS

Allison's Converted MSJ [Doc. # 32] makes two arguments: (1) that Plaintiff's negligent misrepresentation claim is time-barred, and (2) that Plaintiff's breach of contract claim fails because Plaintiff has not identified an employment contract that properly limits the employer's ability to terminate the employee without cause. Allison's MPSJ [Doc. # 37] seeks summary judgment on his own counterclaim that CSMG is in breach of the 2003 Promissory Note.

---

[45]   *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

[46]   *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[47]   *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

## A.      Negligent Misrepresentation Claim (Statute of Limitations)

Allison first argues that Plaintiff's negligent misrepresentation claim is barred by the statute of limitations.  Allison bears the burden of proof on this affirmative defense, and the Court must draw all reasonable inferences in favor of CSMG.[48]

Plaintiff filed this action on February 28, 2007.  Under Texas law, because negligent misrepresentation claims are subject to a two-year statute of limitations for tort, rather than the four-year statute of limitations applicable to fraud claims,[49] Allison must show that CSMG was on notice of the facts supporting its negligent misrepresentation claim before February 28, 2005.

Allison claims that Robbins' 2003 Letter, alleging that Allison falsely stated that payments had been made to CSMG and that certain "Native American resolutions" had been signed, demonstrates CSMG's knowledge in 2003 of the alleged misrepresentations.[50]  Allison also points to Robbins' 2004 Letter, which demanded full disclosure of Allison's personal interest in the entities with whom he was

---

[48]     *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

[49]     TEX. CIV. PRAC. & REM. CODE §16.003(a); *Kansa Reins. Co. Ltd. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1371 (5th Cir. 1994); *Hunton v. Guardian Life Ins. Co. of America*, 243 F. Supp. 2d 686, 703 (S.D. Tex. 2002).

[50]     2003 Letter (Exhibit C to Defendant's Supplemental Brief [Doc. # 38]).

conducting business on CSMG's behalf.[51]

CSMG has identified no specific alleged  misrepresentation made after February 28, 2005, that is, within the limitations period.[52]  Instead, CMSG argues that the negligent misrepresentation claim is broader than Allison's characterizations, pointing to its claims "'regarding the qualifications and actions of certain individuals who had key roles in the funding and development of [CSMG/AFW] projects' and 'representations regarding the status of agreements and financing critical to the success of those projects.'"[53] These generalized assertions are insufficient and are not supported by admissible evidence.  In any event, the discussions in July 2004 (as indicated in the 2004 Minutes), in combination with the 2003 and 2004 Letters, as quoted above, adequately put CSMG on notice of the facts giving rise to its negligent misrepresentation claims, and all are outside the two-year statute of limitations.  The fact that Allison's work continued through 2005 and 2006 does not toll the limitations

---

[51]    2004 Letter (Exhibit D to Defendant's Supplemental Brief [Doc. # 38]).  In addition, although not cited by Allison, Plaintiff CSMG has submitted the minutes from a CSMG board meeting on July 14, 2004, which clearly demonstrate the Board's awareness of Allison's pursuit of opportunities in the international modular housing business, and his dealings with C.T. Stanley.  2004 Minutes (Exhibit C to Response [Doc. # 56]), at 1.

[52]    Plaintiff argues that Allison's misrepresentations regarding the UEC venture, including its modular housing component, were not brought to the CSMG Board until the meeting on July 14, 2004—but this alleged misrepresentation also falls outside the two-year limitations period.

[53]    *See* Response to Converted MSJ, at 8-9 (quoting Complaint [Doc. # 28], at 6).

period.  In Texas, the limitations period runs from the commission of the negligent act, not the ascertainment of damages, even in cases in which all resulting damages have not yet occurred.[54]

At oral argument, the Court notified Plaintiff that its negligent misrepresentation claim would be dismissed unless its post-argument briefing identified a specific misrepresentation made after February 28, 2005, or provided authority stating that continuing or repeated misrepresentations could satisfy the statute of limitations.  Plaintiff's post-argument submission reiterates its prior argument and citations, and fails to cite to any alleged misrepresentation within the limitations period.

CSMG has not demonstrated a genuine issue of material fact in support of its position that the two-year statute of limitations does not bar its negligent misrepresentation claim.  Summary judgment is granted in favor of Defendant Allison on this claim.

**B.      CSMG's Claim for Breach of Employment Agreements**

Allison seeks dismissal of CSMG's breach of contract claim.  CSMG claims in its Complaint that Allison breached his "employment agreements" with CSMG,

---

[54]      *Kansa*, 20 F.3d at 1372; *Hunton*, 243 F. Supp. 2d at 698.

without specifically citing any particular agreements.[55]  In its summary judgment briefing regarding "employment agreements," CSMG cites to the Promissory Note and the 2005 Agreement, as reflected in the January 5, 2005 minutes.  CSMG's complaint alleges that Allison's employment agreements obligated him to develop AFW into a successful entity, and that Allison breached the agreements by "concealing or misrepresenting to CSMG and AFW material information" regarding company projects.[56]

To prevail on a breach of contract claim, a plaintiff must establish the existence of a valid contract, the performance or tender of performance by the plaintiff, a breach by the defendant, and damages as a result of that breach.[57]

_____

[55]     Complaint [Doc. # 28], at 8 (Count Four).

[56]     *Id.*

[57]     *E.g., Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citing *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).  Allison apparently argues that summary judgment is appropriate on Plaintiff's breach of contract claim because the parties' agreements are unenforceable as employment contracts.  *See* Reply in Support of Converted MSJ [Doc. # 59], at 3 (citing *Neihous v. Ark. Glass Container Corp.*, 154 F. Supp. 2d 1006 (S.D. Tex. 2001) (Hittner, J.)).  However, *Neihous* merely held that, because Texas is an at-will employment state, a presumption of at-will employment applies unless an employment contract unequivocally indicates otherwise.  *Id.* at 1011.  That case did not hold—as Allison seems to argue—that an employment contract is completely unenforceable if it fails to limit the employer's right of termination.   Moreover, Allison argues, in support of his breach of contract counterclaim, that the Promissory Note and the parties' agreement at the January 5th meeting *are* binding agreements.  *See* MPSJ, at 7 ("the [Promissory] Note meets all the requirements of a binding contract, and should be enforced"); *id.* at 7-8 ("modification [of the Promissory Note]
(continued...)

CSMG has not demonstrated a genuine fact issue regarding breach by Allison of the parties' agreements.   Although CSMG maintains in its briefing and oral argument that Allison's performance was poor and unacceptable, the parties' agreements include no performance standards.[58] The 2003 Promissory Note states that

---

[57]   (...continued)
was approved by the CSMG Board of Directors").

Allison also argues superficially that Plaintiff's statement in its Form 10-KSB, filed with the United States Securities and Exchange Commission ("SEC") for the fiscal year ending December 31, 2006, demonstrates the absence of any contract between the parties because CSMG states therein, "We have no employment contracts." Defendant's Supplemental Brief [Doc. # 38], at 6 (citing SEC Form 10-KSB, filed by CSMG for fiscal year ending Dec. 31, 2006 (Exhibit F to Defendant's Supplemental Brief)).   Although the SEC form is 65 pages long, Allison provides no page cite for the quotation, and Rule 56 impose no duty on this Court to "sift through the record" in search of evidence supporting a party's argument. *Malacara*, 353 F.3d at 405 (internal citations and quotations omitted).   More fundamentally, Plaintiff points out that the document was dated and signed on March 30, 2007, nearly three months *after* expiration of Allison's term as a Director, which was his last remaining position with CSMG.   Allison's reply brief does not address this argument.   Allison's position is entirely unpersuasive.

[58]   To the extent that CMSG is arguing that Allison and CSMG had an implied agreement that Allison would meet certain performance standards, supplementing the written agreements (2003 Promissory Note and 2005 Agreement), CSMG has not demonstrated a genuine issue of material fact that such an implied contract existed. CSMG has not produced evidence, for example, on the requirement for a meeting of the minds as to what those performance standards were. *See Searcy v. DDA, Inc*., 201 S.W.3d 319, 322 (Tex. App. – Dallas 2006, no writ) (breach of contract claim brought by sales representative, who argued that an enforceable agreement as to his compensation was created by a combination of signed written guidelines and alleged oral agreements, failed; sales representative did not present evidence of a meeting of the minds as to the alleged agreement's essential terms); *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App. – San Antonio, 1989, no writ)  (rejecting bank's claim that it had an implied agreement with accounting firm, based on prior
(continued...)

Allison is due $254,000 for "good and valuable consideration consisting of unpaid salary and unreimbursed expenses, receipt of the benefits of which is acknowledged by CSMG."[59]   The 2003 Note therefore identifies no performance duties on Allison's part, and none can be implied.[60]  The 2005 Agreement, memorialized in the minutes of CSMG's board meeting, has similar issues.  The 2005 Agreement merely requires that Allison do the following: (1) expend "[a]ll [of his] efforts" "exclusively" on AFW activities; (2) resign from certain positions with CSMG and Live Tissue Connect; (3) continue as a board member of CSMG; and (4) continue as President, COO, and Director of AFW.[61]  The parties agree that Allison did, in fact, fulfill his obligation to resign from, and remain in, the specified positions.       The only question upon which a fact question could exist, therefore, is whether Allison fulfilled his obligation

---

[58]      (...continued)
written agreements between the parties and the parties' prior history; alleged oral agreement to provide certain services was not specific as to the services' parameters, duration, or frequency).

[59]      2003 Promissory Note (Exhibit B to MPSJ).

[60]      As noted earlier, Allison's briefing and deposition testimony argue that the Note was in consideration for past *and future* performance of unspecified services by Allison to CSMG.  *See supra* Section I (citing Allison Deposition, at 9-10, 173; MPSJ, at 4, 7).   However, the written agreement controls.  *Weingarten Realty Investors v. Albertson's Inc*., 66 F. Supp. 2d 825, 838 (S.D. Tex. 1999) (Crone, J.), *aff'd*, 234 F.3d 28 (5th Cir. 2000) (citing *Lenape Resources Corp. v. Tenn. Gas Pipeline Co*., 925 S.W.2d 565, 574 (Tex. 1996)) (when construing a written agreement, the court's primary concern is to give effect to the written expression of the parties' intent).

[61]      2005 Agreement (Exhibit E to MPSJ).

to expend "[a]ll . . . efforts. . . . exclusively" on AFW activities.  The Court questions whether such a contractual requirement is sufficiently definite to be enforceable.[62]  In any event, such a performance standard could not be literally applied; if it were, Allison would be contractually barred from expending effort on anything but AFW, including, for example, charity work or remodeling his own home on weekends.  The case law certainly does not support such a rigid reading.[63]   Moreover, if the requirement that Allison expend efforts exclusively on AFW were read literally, the 2005 Agreement would be rendered inconsistent on its face, because the Agreement simultaneously obligates Allison to continue serving as a board member of CSMG,[64] which implies fiduciary obligations that would consume some of his time.

---

[62]    *See Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 793 (Tex. App. – Dallas 2007, no writ) (for an enforceable contract to exist, the contract "must be certain and clear as to all essential terms or the contract will fail for indefiniteness"); *Searcy*, 201 S.W.3d at 322 ("A contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook"); *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App. – Houston [1st Dist.] 1992, writ denied) ("If an alleged agreement is so indefinite that it is impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract") (citing *Moore v. Dilworth*, 179 S.W.2d 940, 942 (Tex. 1944)).

[63]    *See Transamerica Ins. Co. v. Frost Nat'l Bank of San Antonio*, 501 S.W.2d 418 (Tex. Civ. App. – Beaumont 1973, writ ref'd n.r.e.) (in case concerning a trust agreement requiring that contractor "devote its . . . full time to expediting completion" of defendant's contracts, trial court did not impermissibly dilute the contractual language by instructing jury that "a party may substantially devote 'full time' to the performance of a given task without devoting literally all of his time to such work").

[64]    *See* 2005 Agreement, at 1, ¶ 4.

Notwithstanding these concerns, the Court asked CSMG to identify, in its post-argument briefing, any evidence in the record suggesting that Allison did not meet his obligation to expend "all" efforts "exclusively" on AFW.[65]  CSMG's post-argument brief contains only two paragraphs potentially responsive to the Court's question.  The first asserts that Allison operated EDSI, his personal stock investment company, out of his home "in 2005," at the time he was to be spending all of his efforts for AFW.[66]  In support of this allegation, however, CSMG cites only to Allison's deposition testimony, which fails to substantiate the allegation.  In deposition, Allison explained that EDSI is "[his] little investment company," that it was incorporated in 1990, and that, from 1992 through 1999, EDSI furnished office space for both EDSI and CSMG.[67]  He further explained that, in December 1998, the EDSI offices were closed,

---

[65]    In at least one Texas case, the court has held that a contract requiring "exclusive" efforts was breached.  In *Gulf States Equip. Co. v. Toombs*, 288 S.W.2d 203 (Tex. Civ. App. – Waco 1956, writ ref'd n.r.e.), the contract at issue obligated a salesman to "devote his working time to the Company's interests to the exclusion of all other business."  The court held that the employer had established breach of this duty by demonstrating that, on specific dates within the contract's term, the salesman conducted side business.  In particular, that the salesman was obligated to devote his working time exclusively to the employer from June 10, 1947 until the contract's termination on December 15, 1950, but the "undisputed evidence" showed that, in June and September of 1950, the salesman had taken several orders that were not forwarded to his employer, and had retained the profit.

[66]    CSMG's Supplemental Response [Doc. # 67], at 14, ¶ 28 (citing Allison Deposition (Exhibit A to Doc. # 56), at 53-66).

[67]    Allison Deposition (Exhibit A to Doc. # 56), at 54-55.

and Allison set up a home office for EDSI (and presumably for CSMG) in January 1999.[68]  The cited deposition pages contain absolutely no discussion of the period in question—*i.e.*, after January 5, 2005,when the parties agreed that Allison would expend his efforts exclusively on AFW—let alone discussion of specific work Allison did for EDSI during the relevant period.  CSMG's proffered evidence is insufficient to raise a genuine question of material fact that Allison breached the Note, as modified on January 5, 2005.

The second paragraph in CSMG's briefing relevant to the Court's challenge that CSMG provide proof of Allison's breach of the Note as modified is CSMG's argument that, in 2005, Allison attempted to purchase a CSMG subsidiary on his own behalf, allegedly in conflict with his positions with CSMG and AFW.[69]  This argument relies on Allison's deposition testimony in which he stated that he, along with two other CSMG directors, attempted to purchase the subsidiary in order to reduce debt for CSMG, and that the effort was part of his work for CSMG.[70]  CSMG's allegation that Allison's actions conflicted with his positions with CSMG and AFW are relevant to its other claims in this lawsuit, such as its claim for breach of fiduciary duty.  The

---

[68]     *Id*. at 58-59.

[69]     CSMG's Supplemental Response [Doc. # 67], at 13-14, ¶ 27 (citing Allison Deposition, at 180-84).

[70]     Allison Deposition, at 180-84.

proof offered and an allegation of a conflict of interest, however, do not demonstrate a genuine fact issue as to whether Allison performed his enumerated duties under the 2005 Agreement.  There is no evidence that the amount of time Allison spent on the purchase proposal was material and thus could even arguably be evidence sufficient to support a breach of the "all" efforts clause.[71]

Plaintiff CSMG thus has pointed to no probative evidence suggesting that Allison failed to perform his duties under the parties' agreements.  As stated previously, the parties' agreements contain no performance standards;[72] even if CSMG presented irrefutable evidence that Allison's performance was poor or ineffective, such evidence would not establish breach of these agreements.  Although the Court is required to review all facts and inferences in the light most favorable to CSMG (as non-movant), CSMG cannot survive summary judgment if it fails to present "*specific*

---

[71]   *See  Transamerica*, 501 S.W.2d at 423 (affirming lower court's instruction that "a party may substantially devote 'full time' to the performance of a given task without devoting literally all of his time to such work," and noting that the defendant alleging breach of the "full time" requirement had presented no evidence that the contractor had neglected his jobs for defendant, that the contractor had "devoted an unreasonable amount of time" to the outside jobs, or that the defendant ever notified the contractor that it objected to his other activities).

[72]   The 2003 Note identified no performance duties for Allison, and the 2005 Agreement merely required that Allison (1) expend "[a]ll [of his] efforts" "exclusively" on AFW activities; (2) resign from certain positions with CSMG and Live Tissue Connect; (3) continue as a board member of CSMG; and (4) continue as President, COO, and Director of AFW.  2003 Promissory Note (Exhibit B to MPSJ); 2005 Agreement (Exhibit E to MPSJ).

facts showing the existence of a genuine issue concerning every essential component of its case."[73]  In the absence of any proof that Allison failed to perform his duties under the agreements, the Court will not assume that CSMG could or would prove the necessary facts.[74]  Summary judgment in favor of Allison on CSMG's breach of contract claim is granted.

### C.    **Breach of Promissory Note (Counterclaim)**

Under the 2003 Promissory Note, payment to Allison of the principal amount of $254,000 was due in full on or before November 5, 2006.  The 2003 Note provided that it would not bear interest before the due date but that, if the principal amount were not paid in full by November 5, 2006, "the outstanding principal amount of the Note shall commence to bear interests on November 6, 2006[,] at an annual rate of 10%."[75]  Allison states that CSMG has made only three payments on the 2003 Note, totaling $28,030; that an unpaid principal balance of $225,970 remains; and that, with interest, he is due a total of $330,842.68.[76]  CSMG has not presented any evidence or argument about specific amounts due under the Note.

---

[73]     *Am. Eagle Airlines*, 343 F.3d at 405 (citation and internal quotation marks omitted) (emphasis added).

[74]     *Little*, 37 F.3d at 1075.

[75]     2003 Promissory Note (Exhibit B to MPSJ).

[76]     Allison Affidavit (Exhibit C to MPSJ).

The elements of a breach of contract claim are existence of a valid contract, the performance or tender of performance by the plaintiff, a breach by the defendant, and damages as a result of that breach.[77]  As stated above, Allison argues in support of his counterclaim that the Promissory Note is a binding contract.  He claims that, although he performed his obligations under the 2003 Note and the 2005 Agreement, CSMG has not paid him as agreed and therefore is in breach.

CSMG does not dispute that the parties had a valid contract, nor does it dispute its failure to pay.  Its only argument is that Allison failed to tender performance.  As held above, Plaintiff CSMG has not demonstrated a genuine issue of material fact that Allison failed to perform his duties under the parties' agreements.  Summary judgment on Defendant's counterclaim therefore is granted.  However, because multiple other claims remain pending in this lawsuit, no payment on this judgment is due until all claims are fully and finally resolved by this Court.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Allison's Motion to Dismiss [Doc. # 32], which has been converted to a motion for summary judgment, is **GRANTED**.  It is further

**ORDERED** that Defendant Allison's Motion for Partial Summary Judgment

---

[77]   *See Bridgmon*, 325 F.3d at 577.

on Defendant's Counterclaim for Suit on Promissory Note and Brief in Support [Doc. # 37] is **GRANTED**.  However, no payment on this judgment is due until all claims are fully and finally resolved by this Court.  It is further

      **ORDERED** that CSMG's request for attorneys' fees, which was contingent upon CSMG obtaining judgment in its favor on its breach of contract claim, is **DENIED as moot**.

      SIGNED at Houston, Texas, this **30<u>th</u>** day of **September, 2008**.

<br/>

Nancy F. Atlas
United States District Judge